United States District Court

Middle District of Pennsylvania

Jeffrey E. Simpson
                    plaintiff            No. 4:CV-10-1187

         V                               (Muir, Judge)

United States of America, et al
                    defendants

_Response Brief to Motion to Dismiss or Alternative for Summary_
_Judgement and Cross-Motion for Summary Judgement_

Respectfully Submitted,

Pro Se ___   Jeffrey E. Simpson
             04394-036
             USP-Lewisburg
             P.O. Box 1000
             Lewisburg Pa 17837

dated March 9, 2011

Table of Contents

I.   Introduction _____ 1

II.  Procedural History _____ 4

III. Factual History _____ 5

IV.  Arguments and Questions Presented _____ 8

    a.  Legal Standard - Dismissal _____ 8

    1.  Subject Matter Jurisdiction _____ 8

    3.  Failure to State a Claim _____ 8

    B.  Legal Standard - Summary Judgement _____ 9

    C.  Should this court dismiss the Bivens claims against the United States and Official-
        Capacity Claims against Lappin and Bledsoe because the United states has not
        Waived Sovereign immunity ?

            Suggested Answer: Negative _____ 11

    D.  Should this court dismiss the FTCA claim or grant summary judgement to the
        United States because Simpson has failed to exhaust administrative remedies ?

            Suggested Answer: Negative _____ 12

    E.  Should this court dismiss the individual-capacity claims or grant summary judge-
        ment because Simpson failed to state a cognizable Eighth Amendment claim ?

Suggested Answer: Negative _____ 15

F.   Should this court grant Simpson's requested injunctive relief?

Suggested Answer: Affirmative _____ 23

G.   Should this court grant summary judgement to Defendants Lappin and Bledsoe because they are entitled to qualified immunity?

Suggested Answer: Negative _____ 27

H.   Should this court dismiss the complaint or grant summary judgement to Defendants Bledsoe and Lappin because they lack personal involvement in the alleged constitutional violation, and because respondeat superior cannot form the basis for a Bivens Claim?

Suggested Answer: Negative _____ 29

V.   Conclusion _____ 32

Table of Authorities

Federal Cases

Allah v. Al-Hafeez, 226 F.3d 247 (3d Cir 2000) _____ 22

Anderson v. Liberty Lobbet's Lobby Inc., 477 U.S. 242 (1986) _____ 10, 9

Beal v. Dep't of Justice, LEXIS 6837 (D. NJ 2007) _____ 13

Beers-Capitol v. Whetzel, 256 F.3d 120, (3d Cir 2001) _____ 17 – 19, 22, 24, 27–30

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) _____ 9

Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) ____ 11

Burch v. Billinatier, LEXIS 4975 (M.D. Pa 2003) _____ 12

Cantekin v. University of Pittsburgh, 192 F.3d 402 (3d Cir 1999) _____ 10

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) _____ 9

City of Canton v. Harris, 489 U.S. 378 (1989) _____ 30

Counterman v. Warren County Corr. Facility, 176 Fed. App'x 234 (3d Cir 2008) _____ 21, 31

DeShaney v. Winnebago County Dep't of Soc. Serv's, 489 U.S. 189 (1989) _____ 15, 23

Farmer v. Brennan, 511 U.S. 825 (1994) _____ 15, 18

Fontroy v. Beard, LEXIS 44940 (E.D. Pa 2007) _____ 23, 25

Hubbard v. Taylor, 399 F.3d 150 (3d Cir 2004) _____ 22

Hunt v. Cromartie, 526 U.S. 541 (1999) ............................................ 10, 26

Hutto v. Finney, 437 U.S. 678 (1978) ............................................ 25

Jordan v. Fox Rothschild, O'Brien, and Frankel Inc., 20 F.3d 1250 (3d Cir 1994) ............................................ 8

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ............................................ 23

Maldonado v Houstoun, 157 F.3d 179 (3d Cir 1998) ............................................ 24

Mejias v. Roth (in re Bayside Prison Litigation), LEXIS 12767 (3d cir 2007) ............................................ 22

Mitchell v. Horn, 318 F.3d 523 (3d Cir 2003) ............................................ 8

Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir 2007) ............................................ 9

Pichler v. Unite, 542 F.3d 380 (3d Cir 2007) ............................................ 22

Riley v. Jeffes, 777 F.2d 143 (3d Cir 1985) ............................................ 16, 17, 20, 24, 30

Sample v. Diecks, 885 F.2d 1099 (3d Cir 1989) ............................................ 22, 24, 30

Scott v. Marshall, LEXIS 19342 (M.D. Pa. 2010) ............................................ 9

Steel City v. Citizens for a Better Env't., 523 U.S. 83 (1998) ............................................ 8

Tillery v. Owens, 907 F.2d 418 (3d Cir 1990) ............................................ 16, 25, 28

Urrutia v. Harrisburg County Police Dep't, 91 F.3d 451 (3d Cir 1996) ............................................ 16, 28

Williams v. Holtzapple, LEXIS 30710 (M.D. Pa. 2010) ............................................ 16, 28, 30

## Federal Statutes

5 U.S.C.S. § 706 _____ 13, 24

18 U.S.C.S. § 4042(a)(2) _____ 14, 24

18 U.S.C.S. § 4042(a)(3) _____ 14, 24

28 U.S.C.S. § 1331 _____ 4

28 U.S.C.S. § 1346(b) _____ 13

28 U.S.C.S. §§ 2671-2680 _____ 13

## Federal Rules / Regulations

Fed. R. Civ. P. 8 _____ 8

28 C.F.R. § 552.21(b) _____ 14

I. Introduction

Simpson brought a joint action under Bivens and the Administrative Procedures act (APA) on November 19, 2010, seeking respectively, punitive and nominal damages against individual-capacity Defendants Lappin and Bledsoe; and seeking injunctive and declaratory relief against the United States, Official-Capacity Defendants Lappin and Bledsoe under the APA. Compl. (Doc 23) ¶¶ 1, 24-27, and Caption.   Simpson alleged in his complaint that Lappin and Bledsoe have created an unreasonable risk of assault by his cellmate during a handcuffing procedure promulgated by the defendants, and followed by SMU staff at Lewisburg Penitentiary. Compl. (Doc 23) ¶¶ 9-10, 22.   Simpson has alleged that he and all SMU prisoners assigned to double cells are at an unreasonable risk of assault because under identical circumstances attacks on handcuffed prisoners in the SMU by their cellmates are inordinately numerous, widespread, and pervasive — resulting in serious injuries and deaths. Compl. (Doc 23) ¶¶ 15, 22.

Simpson has alleged that Defendants Lappin and Bledsoe are aware of these attacks and deaths and have failed to take any action to alleviate the danger. Compl. ¶¶ 15-16.   Simpson has alleged that Lappin and Bledsoe are aware that the handcuffing procedure makes no exemption for emergencies, be it, an attack on a helpless handcuffed prisoner, or need for emergency medical care — Lappin and Bledsoe have aquiesed, in witnessing correctional officers non-intervention, during these emergencies by their failure to

take any meaningful action to alleviate the dangers of handcuffing in non-isolated areas; and then actually facilitating attacks or exacerbating injuries by delaying medical care. Compl (Doc 23) ¶¶ 11-16.

Defendants, The United States, Harley Lappin and B. A. Bledsoe filed a motion to dismiss or in alternative for summary judgement alleging numerous issues with Simpsons complaint. The Defendants have: (1) misconstrued somehow Simpsons claims against Lappin and Bledsoe in their official-capacity, and the United States; requesting injunctive and declaratory relief under the APA —— as claims for monetary relief under the FTCA; (2) Sought dismissal or summary judgement because Lappin and Bledsoe had no knowledge or personal involvement in any constitutional injury; (3) Sought dismissal or summary judgement because Simpson is in no danger, and is not entitled to injunctive relief; (4) Sought sovereign immunity under the FTCA; and (5) Sought qualified immunity for Bivens claims.

Most of the defendants issues are raised on the misconception that Simpson has brought claims under the FTCA and for that reason will be demonstrated as moot issues.

## Disputed Facts

The Defendants Statment of Material Facts (SMF) are disputed, Simpson has filed a supporting, Opposing Statement of Material Facts (OSMF) to those enumerated facts in dispute.

Simpson request that this court take judicial notice that he opposes the Defendant's following enumerated SMF's: 4, 11, 24, 28-29, 31, 38-41.

### Issues of Material Fact

Simpson request this court to take Judicial notice of the following issues arising from material facts;

1. Lappin and Bledsoe knowingly fail to separate and control the Bureau of Prison's (BOP) most dangerous prisoners, and mandate these SMU prisoners are double-celled. OSMF ¶¶ 4, 11, 28-29.

2. Lappin and Bledsoe have made no provisions for emergency cell moves or cellmate changes — even incident to imminent signs of violence between SMU cellmates or expressed imminent violence cell or cellmate changes are left to the sole disgretion of SMU staff there are no provisions or directives concerning immediate emergency cell or cellmate changes. OSMF ¶¶ 24, 38-41.

3. Lappin and Bledsoe are aware that all SMU prisoners in Simpsons situation are at extreme risk of serious injury and death —— but have done nothing to allieviate these dangers and hence, have disregarded the risk and demonstrated Eighth Amendment violations via their deliberate indifference to Simpson's safety. OSMF ¶¶ 11, 28-29.

3

## II. Procedural History

Simpson filed a complaint on June 3, 2010 (Doc 1). On November 8, 2010 this court ordered that complaint stricken from the record and articulated within 20 days of that order Simpson must file a complaint as a "new pleading" without reference to Document 1, which was stricken from the record. (Doc 20). Simpson filed his "operative initial complaint" on November 19, 2010. (Doc 23).

Simpson stated jurisdiction under 28 U.S.C.S. § 1331, requested monetary relief against the individual-capacity defendants under Bivens, and requested equitable relief against the United States and it's officials in their official-capacity under the Administrative Procedures Act (APA). Compl (Doc 23) caption, and ¶1.

Defendants, Lappin, Bledsoe, and the United States moved to dismiss Simpson's complaint or in alternative moved for summary judgement, after several motions for an extention of time filed their brief in support of their operative motion on January 19, 2011 (Doc 28). This brief was in excess of the 15 page 5000 word limit and therefore was accompanied by a nunc pro tunc motion for leave to file a brief in excess of 15 pages (Doc 29-30).

## III. Factual History

Simpson has been confined in the Special Management Unit (SMU) at United States Penitentiary Lewisburg. "Statement of Material Fact"(SMF) ¶ 1.   Prisoners are generally assigned to the SMU due to chronic histories of predatory behaviors, to separate them from other prisoners, to ensure the safety, security, and orderly operation of BOP facilities "Opposing Statement of Material Fact" (OSMF) ¶ 4; SMF ¶ 5.

Despite the impliedly excessive danger that these prisoners pose to; other prisoners, staff, the security and orderly running of BOP Facilities, and the public — the Director of the BOP, Harley Lappin and Warden at Lewisburg, B. A. Bledsoe have required that these inordinately dangerous and uncontrolable prisoners be assigned to two man double-cells while confined in the SMU. SMF ¶ 13.

When problems have developed between Simpson and his cellmate or other identically situated SMU prisoners while confined to double-cells in the SMU—— expressed request to immediately change cells or cellmates have invariably been denied, somtimes for months, or denied altogether. OSMF ¶¶ 24, 39-41. There is no policy directing SMU staff's discretion where cell or cellmate changes are neccessary and immediate emergency intervention is required. Cell or cellmate changes are contingent

Upon the following:   first because ranges are generally full to capacity, making a cell change impossible, second cellmate changes are invariably delayed due to separtee concerns. OSMF ¶¶ 24, 39-41; SMF ¶¶ 25, 43.

   Lappin and Bledsoe knowingly have exposed Simpson and other SMU prisoners to an excessive risk of serious injury and death. During Simpsons confinement in the SMU he and similarly double-celled prisoners have been required through procedures promulgated by Lappin and Bledsoe —— during all out of cell activities, and with no exemption for "any emergency" —— to be placed in handcuffs prior to coming out of his cell for any reason. This requires Simpson or his cellmate at random order to chronologically place their hands behind the back, through the cell-door tray slot — where officers outside of the locked cell-door apply handcuffs one at a time to each cellmate. OSMF ¶¶ 11, 28-29. This procedure invariable leaves Simpson or his cellmate vuncrable to assault by the other while handcuffed, unable to flee or fight off an attack by his cellmate and these identical situations have caused and actually facilitated 3 homocides and approximately 20 serious assaults; where the very officers whom applied the handcuffs and are witnessing an assault or homocide occur —— have declined to intervene due to Lappin and Bledsoes mandate on handcuffing. OSMF ¶¶ 11, 28-29.

Lappin and Bledsoe are aware of these events, that have been repeated time and again, they are aware that double-celled prisoners continually assault and murder their handcuffed cellmates, while the witnessing officers fail to intervene, they are aware that all prisoners in Simpsons situation are at extreme risk of serious harm and death, they were aware of these events and the risk that they posed to Simpson's safety prior to his filing his complaint (DOC 23), and failed to take "any" action to allieviate such risks to present date. DSMF ¶¶ 11, 28-29.

IV. Questions Presented and Arguments

A. Dismissal

1. Subject Matter Jurisdiction

The court may weigh any evidence to satisfy itself that it does or does not have subject matter jurisdiction. Steel City Co. v. Citizens for Better Env't 523 U.S. 83, 102 (1998).

Simpson has made an extesive jurisdictional statement and has sought relief against each defendant in either their official or individual-capacity. Compl. (Doc 23) caption, ¶ 1. Because Simpson is proceeding pro se his complaint should be construed nonrestrictively. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir 2003).

2. Failure to State a Claim

In considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the court must accept as true all allegations in the plaintiff's complaint and all reasonable inferences that can be drawn from the complaint will be construed in a light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien and Frankel Inc., 20 F.3d 1250, 1261 (3d Cir 1994). "Fed.R.Civ.P. 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief", in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests."

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) "a plaintiff must make a factual showing of his entitlement to relief by alleging sufficient facts which, when taken as true, suggest the required elements of a particular legal theory" Scott v. Marshall, LEXIS 19342 (M.D. Pa. 2010) Citing Twombly, 550 U.S. 544, 562 (2007). Twombly's holding "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the neccessary element" Phillps v. County of Allegheny, 515 F.3d 224, 234 (3d Cir 2007).

## B.     Summary Judgement

Summary judgement is appropriate when supporting materials, such as affidavits and other documentation show that there are no material issues of fact to be resolved and the moving party is entitled to judgement as a matter of law. Celotex Cor. v. Catrett, 477 U.S. 317 (1986). In Celotex the court held that "Rule 56 (e) ... requires that the non-moving party go beyond the pleadings by [his] own affidavits, or by depositions, answers to interrogatories and admissions on file' designate 'specific facts showing that there is a genuine issue for trial" Id at 324. "A fact is material if it may affect the outcome of the case. Anderson v. Liberty Lobby Inc, 477 U.S. 242, 248 (1986).

In ruling on a motion for summary judgement the court will never weigh evidence or find facts.

Instead the courts role under Rule 56 is narrowly limited to assessing the threshold issue of whether a genuine issue exists as to material facts requiring a trial. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 249 (1986). Thus, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the moving party, all evidence will be construed in a light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving parties favor. Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999).

Reasonable inferences are not necessarily more probable or likely than other inferences that might tilt in the moving parties favor. Instead so long as more than one reasonable inference can be drawn, and that inference creates a genuine issue of material fact, the trier of fact is entitled to decide which inference to believe and summary judgement is not appropriate. Id 526 U.S. at 552.

The Court will not weigh the credibility of witnesses or other evidence when ruling on a summary judgement motion. Anderson, 477 U.S. at 255. As credibility questions will generally abound — a persons state of mind, i.e., motive, knowledge, intent, good faith, bad faith, malice, fraud, conspiracy, or consent — such cases will seldom lend themselves to summary disposition because, again questions of credibility will abound. Hutchinson v. Proxmire, 443 U.S. 111 (1979); Cantekin v. Unv'ty of Pitt., 192 F.3d 402, 411 (3d cir 1999).

C. Should this court dismiss the Bivens claims against the United States, and the official-capacity claims against Defendants Lappin and Bledsoe, because the United States has not waived immunity.

NEGATIVE:

The Plaintiff suggest this court answer Defendants above cited question in the negative because Simpson has not brought Bivens claims against the United States, or against Lappin and Bledsoe in their "Official-Capacities".

Simpson has brought individual-capacity claims against Lappin and Bledsoe under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 389 (1971).

The caption of Simpson's complaint names the Defendants in their official and individual-capacities. Compl. (Doc 23). Under Bivens, both Defendants Lappin and Bledsoe may be held liable for constitutional violations in their individual-capacities. Id. Simpson has filed a joint action under Bivens for individual-capacity claims, and respectively under the Administrative Procedures Act (APA) 5 USC § 701 et seq.; against the United States and Defendants Lappin and Bledsoe in their official-capacities. Compl. (Doc 23) ¶ 1.   Construed liberally Simpsons complaint has alleged proper individual-capacity Defendants under Bivens. Haines v. Kerner, 404 US 519, 520-21 (1972).

Therefore Defendants suggestion that Simpson has sought relief under Bivens against the United States, or official-capacity Defendants is a misconception, as such these grounds for dismissal are moot.

11

D.  Should this Court dismiss the FTCA claim or grant summary judgement to the United States because Simpson failed to exhaust administrative remedies

Suggested Answer: NEGATIVE

This Court should neither dismiss claims against the United States nor grant summary judgement because Simpson has not brought a claim under the FTCA, and need not exhaust administrative remedies required under the provisions of the FTCA, therefore, Defendant's grounds for dismissal or summary judgement in favor of the United States are moot.

Administrative Procedures Act (APA) 5 U.S.C.S. § 701 et seq.

Simpson has brought his action against the United States, and Official-Capacity Defendants, Lappin and Bledsoe under the APA "only". Compl. (Doc 23) caption, ¶ 1.   Simpson has sought judicial review of final agency action regarding his administrative Remedy Request (BP-9) filed with Warden Bledsoe. Comp (Doc 23) ¶¶ 1, 17.  Simpson has averred that his action is authorized under the APA §§ 702-03 against the United States, and Bureau of Prison Officials. Id ¶ 1.  Under the APA the United States has waived immunity for itself and it's Officials for actions seeking relief other than money damages. Burch v. Billingtier, LEXIS 4975 (E.D. Pa 2003).  Simpson has sought only equitable relief against the United States and it's Officials, i.e., "any relief provided therein". Compl. (Doc 23) ¶ 1.  Simpson has sought only declaratory and injunctive relief under the Act. Id at ¶¶ 24 - 25.

The Defendants have misconstrued Simpsons Claims against the United States and official-capacity Defendants Lappin and Bledsoe; as claims brought under the FTCA. It is unclear how the Defendants could mistake Simpson's APA claims as claims brought under the FTCA, in light of Simpson's extensive jurisdictional statement. Compl (Doc 23) ¶ 1.

Simpsons APA claims are for equitable relief. Id ¶¶ 24-25. The District Court lacks subject matter jurisdiction under the FTCA 28 U.S.C.S. §§ 2671-2680, to provide declaratory or injunctive relief; 28 U.S.C.S. § 1346(b) provides that the District Courts have jurisdiction over claims against the United States for money damages, for loss of property, personal injury, and death. Beal v. Dep't of Justice, LEXIS 6837 (D.N.J 2007).

## Scope of Review 5 U.S.C.S. § 706

"The reviewing court shall - - - - -

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, finings, and conclusions found to be - - - - -

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

Simpson's requests that this court hold unlawful and set aside findings and conclusions via warden

Bledsoes response to Simpson's Administrative Remedy Request (BP-9) are equitable claims for relief.

These claims have no relevance to a FTCA claim, and hence the Defendants' suggestion that this

Court should dismiss Simpson's claims or in alternative grant summary judgement to the United States

premised upon grounds that Simpson failed to exhaust administrative remedies under the FTCA

have no connection to this action and as such are moot issues.

This Court may hold unlawful and set aside findings and conclusions relevant to Final agency

responses to Simpson's administrative Remedy Request BP-9 requesting a single cell as a possible remedy

in the event that this court finds that (1) Lappin and Bledsoe have unlawfully failed to provide for

Simpson's Safekeeping and protection mandated by 18 U.S.C.S. § 4042(a)(2) and (3) ; (2) Lappin

and Bledsoe failed to follow 28 C.F.R. § 552.21(b) and have in that regard failed to mandate hand-

cuffing of prisoners "only" in isolated areas ; and (3) Lappin and Bledsoe have violated Simpson's

Constitutional rights. See Administrative record (Plntff's Ex D)

E. Should this court dismiss the individual-capacity claims, or grant summary judgement to Defendants Lappin, and Bledsoe because Simpson has failed to state a cognizable Eighth Amendment claim.

Suggested Answer: NEGATIVE

Defendants Lappin and Bledsoe have (1) promulgated a policy and procedure which impliedly acquieces in non-intervention by Correctional officers incident to emergency circumstances regarding double-celled SMU prisoners; (2) Knowingly authorized double-celling of SMU prisoners despite an unprecedented increase in cellmate violence; (3) Knowingly subjected Simpson via acquiesence of policy or procedures to a substantial risk to Simpson's future health and safety.

"When the state by affirmative exercise of it's powers so restrains an individuals liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs — e.g., food, clothing, shelter, medical care, and reasonable safety — it transgresses the substantive limits on state action set by the Eighth Amendment." Deshaney v. Winnebago County Dep't of Social Services, 489 U.S. 189, 199-200 (1989).   The Eighth Amendment requires that inmates are furnished with "reasonable safety". Id at 200.

To state an Eighth Amendment claim for failure to protect, an inmate must establish that (1) the deprivation i.e., the risk of assault, must be objectively, sufficiently serious, and (2) that a prison official acted or failed to act with deliberate indifference. That is, the prison official must both Know of and disregard an excessive risk to inmate health and safety. Farmer v. Brennan, 511 U.S. 825, 834, 837 (1994).

The Third Circuit has held that a prisoner need not wait until they are actually assaulted before obtaining relief. Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir 1985). In cases where an attack has not yet occurred, the inmate demonstrate the risk to be pervasive, "and may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be shown by much less than proof of a reign of violence and terror." Id at 147.

### The Risk of Assault is Objectively Serious

The Third Circuit has also held that allegations that police officers had handcuffed a prisoner, and then, merely looked on, and failed to intervene, when the prisoner was being stabbed, while handcuffed — Stated a viable Eighth Amendment claim for failure to protect. Urrutia V. Harrisburg County Police Dep't, 91 F.3d 451, 456 (3d Cir 1996). Urrutia has been cited with approval see Williams v. Holtzapple, LEXIS 30710 (M.D. Pa. 2010). In Williams, the court held that the restriction on cruel and unusual punishment contained in the Eighth Amendment reaches non-intervention just as readily as it reaches the more demonstrable brutality of those who unjustifiably and excessively employ fist, boots, or clubs. Id.

There has been precedent in this Circuit for quite some time that double-celling violates the Eighth Amendment when it leads to increased violence. Tillery v. Owens, 907 F.2d 418, 432 (3d Cir)

While making an inquiry into whether or not Simpson has alleged or proved that he in particular was in danger of attack while handcuffed — the courts have held: " It does not matter whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk. Beers-Capitol v. Whetzel, 256 F.3d 120, 131 (3d Cir 2001).

Simpson has demonstrated that he and all other SMU prisoners in his identical situation are in danger and are substantially at risk of serious injury or death. Opposing Statement of Material Facts (OSMF) ¶¶ 11, 28 Simpson's Complaint avers the same. Compl. (Doc 23) ¶¶ 13-15.   It should be noted that the Riley court has expressed that an inmate may demonstrate a pervasive risk of assault by showing much less than proof of a reign of violence or terror. Riley, 777 F.2d at 147.  In Riley, the court held that miscell-aneous acts of violence and threats alleged in Riley's Complaint stated a cognizable pervasive risk of harm to inmates from other prisoners. Id at 147-148.   The risk of harm under Simpson's circ-umstances is much more egregious. At least 3 homicides and a total of approximately 20 assaults have been perpetrated on handcuffed prisoners by their cellmate in a situation identical to Simpson's. OSMF ¶ 11.   These occurrences are repetitive, and nearly identical, they are not isolated incidents, but rather demonstrate a pattern of circumstantial evidence of acquiescence, and knowledge on the part of Lappin

and Bledsoe by their disregard and failure to alleviate a substantial risk. Beers-Capitol v. Whetzel, 256 F.3d 120, 131 (3d Cir 2001).

## Deliberate Indifference

Simpson has alleged that he has been exposed to an excessive risk of attack while handcuffed because all smu prisoners face such a risk. Compl. (Doc 23) ¶¶ 12-15, 19, 22; OSMF¶¶ 11, 28-29; Simpson has both alleged and demonstrated that Lappin and Bledsoe know of the excessive risk to Simpson, disregarded the risk, and failed to take any action to alleviate that risk. Compl. (Doc 23) ¶¶ 15-16; OSMF¶¶ 11, 24, 28-41.

As articulated in the Appeals court for this circuit, to wit, Beers-Capitol, 256 F.3d at 131, the leading Eighth Amendment deliberate indifference analysis for a prison case is Farmer v. Brennan, 511 U.S. 825 (1994). Beers-Capitol interpreted Farmer as rejecting an objective test for deliberate indifference; instead it looked to what the prison official actually knew rather than what a reasonable official in his position should have known. More specifically, the Farmer court held that "a prison official cannot be found liable under the Eighth Amendment for denying humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. Beers-Capitol, 256 F.3d at 131.

This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Id at 131. "Under the test we adopt today, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm would actually befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm". Id at 131. "Moreover, a defendants knowledge of a risk can be proved indirectly by circumstantial evidence. A factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious". Id at 131.

"Farmer anticipated that a plaintiff could make out a deliberate indifference case by showing that prison officials simply were aware of a general risk to inmates in the plaintiff's position". Id 131

Simpson has alleged and demonstrated not only that Lappin and Bledsoe are aware of an obvious risk, but that they themselves have created and aquiesed in this obvious danger through their developement and approval of a pratice where, first they fail to seperate the BOP's most dangerous prisoners by their mandate on double-celling SMU prisoners; and then deliberately compound ovious increased dangers by mandating one prisonr can be left vunerable to assault while handcuffed by his unrestrained cellmate. Whats more shocking and

the most telling that the risk is so obvious, is that Lappin and Bledsoe prohibit intervention in "any"

and "all" emergencies unless both SMU prisoners agree to submit to handcuffs while confined in

double-celled assignments. Compl. (Doc 23) ¶¶ 7, 11; OSMF ¶¶ 4-41.   If the old adage is

held true, i.e., "ignorance is no exception to the law", then of coarse the Defendants Lappin and Bledsoe cannot

claim that the risk was not obvious because "When prison officials have failed to separate or control prisoners

who endanger the physical safety of other prisoners and the level of violence becomes so high - - - - it const-

itutes deliberate indifference" Riley v. Jeffes, 777 F.2d 143, 145 (1985 3d Cir).   SMU prisoners are assigned to

the program for various predatory behaviors. OSMF ¶ 4.   Violence among double celled SMU prisoners is

unprecedented in both frequency and number per capita SMU prisoner, as opposed to the general population

of the BOP. OSMF ¶¶ 11, 28-29; Compl. (Doc 23) ¶ 15.   This court could find that the risk is obvious

because it is unreasonable for Lappin and Bledsoe to promulgate a procedure of mandatory handcuffing the BOP's

most dangerous double-celled prisoners, and failing to make provisions to exempt mandatory handcuffing

during emergencies. OSMF ¶ 11, 28-29.

   Circumstantial evidence that Lappin and Bledsoe perceived an excessive risk to Simpson's health and

safety — and disregarded that risk — are abundant.  Actual knowledge can be demonstrated by showing the

general danger was obvious; that is, where a substantial risk of inmate attacks was longstanding, pervasive well-documented, or expressly noted by prison officials in the past", and where "circumstances suggest that the defendant official being sued had been exposed to information concerning the risk and must have known about it." Counterman v. Warren County Corr. Facility, 176 Fed. App'x 234, 238 (3d Cir 2008).

Simpson's "operative initial complaint" was filed on November 19, 2010. Compl (Doc 23). Prior to that date at least 3 homicides and approximately 20 assaults have occurred under the identical situation or circumstances as those described in Simpsons complaint. Warden Bledsoe has been sued in a prior lawsuit and responded to multiple administrative remedy requests on this issue. These incidents have been the focus of Federal Bureau of Investigation inquiries into some of these many incidents of assault and homicide, and have been extensively well-documented by the BOP also. Harley Lappin has been apprised of these issues personally in addition to his knowledge of prior lawsuits and documents regarding this issue. OSMF ¶ 11; and references made to the record via ¶ 11, i.e., Simpson Decl. (Plntff's Ex A); Harris Decl (Plntff's Ex B) ¶¶ 2-3; Incident Report (Plntff's Ex C); Admin. Remedy Rqst BP-9,10,11 (Plntff's Ex D); previous Lawsuit (Plntff's Ex E).

Supervisor liability can easily be established by showing that the supervisory official failed to

respond appropriately in the face of awareness of a pattern of such injuries. Beers-Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir 2001). Beers-Capitol articulated that supervisors may be held liable for their deficient policies where they exhibit deliberate indifference to the plaintiff's risk of injury. The court held that it need only apply the analytical structure of the (4) four-part test announced in Sample v Die- cks, 885 F.2d 1099, 1118 (3d Cir 1989) to that of the specific situation of a policymaker. Id. Beers-Capitol at 135.

## Damages

There is no dispute Simpson has requested, nor is there any apparent argument from the Defense that Simpson is entitled to both nominal and punitive damages if Simpson is successful in proving an Eighth amendment violation against Lappin and Bledsoe under Bivens. An award of nominal damages is generally available to vindicate a plaintiff's rights, and punitive damages are generally available to punish and deter future violations. Hubbard v. Taylor, 399 F.3d 150 (3d Cir 2004); Allah v. Al-Hafeez, 226 F.3d 247, 252 (3d Cir 2000). The requisite standard of culpability for an award of punitive damages is "deliberate indifference". Mejias v. Roth (in re Bayside Prison Litig.), LEXIS 12767 (3d Cir 2009); Pichler v Unite, 542 F.3d 380 (3d Cir 2007).

F. **Should** Simpson be granted injunctive relief ?

<u>Affirmative:</u>

Defendants Lappin and Bledsoe have promulgated a procedure that impliedly aquieses in non-intervention by subordinate SMU correctional staff during emergencies involving double-celled SMU prisoners. In addition to non-intervention, this procedure, i.e., mandatory handcuffing in non-isolated areas has facilitated much more egregious injuries than would normally occur because a handcuffed prisoner cannot fight off an attack by his unrestrained cellmate or flee to safety.

In order for Simpson to establish standing that he is entitled to injunctive relief, he must demonstrate: (1) an invasion of a legally protected interest; (2) a casual connection between the injury and the conduct complained of; and (3) a likelihood of his injury being redressed favorably. Lujan v. Defenders of Wildlife, <u>504 U.S. 555, 560-61 (1992).</u>

First, if this court finds Simpson's Eighth Amendment claims to be valid or any conduct alleged to be unlawful, then Simpson has in fact stated a cognizable injury and invasion of a legally protected interest Fontroy v. Beard, <u>Lexis 44940 (E.D. Pa. 2007).</u>   Secondly, Simpson has demonstrated a connection between the injury and conduct complained of by demonstrating Lappin and Bledsoe have rendered Simpson incapable of caring for himself and then failing to provide him with reasonable safety as required by the Eighth Amendment. Deshaney v. Winnebago County Dept of Soc. Sv'cs., <u>489 U.S. 189, 199-200 (1989).</u>  Third,

it is more than likely this court with intervene in this matter, there have been three homicides, and approximately

20 assaults under circumstances identical to Simpson's. The risk to Simpson's health and safety is pervasive

and the courts have been quite adamant that in the face of danger, an inmate need not wait until he is

actually assaulted prior to obtaining relief. Riley v. Jeffes, 777 F.2d 143, 147 (1985). As stated below

"It does not matter whether a prisoner faces an excessive risk for reasons personal to him or because all

prisoners in his situation face such a risk. Beers-Capitol v. Whetzel, 256 F.3d 120, 131 (3d cir 2001).

A preliminary injunction may be granted if: (1) the plaintiff is likely to succeed on the merits;

(2) denial will result in irreparable injury; (3) granting the injunction will not result in irreparable harm

to the defendant; and (4) granting the injunction is in the public interest. Maldonado v. Houstoun,

157 F.3d 179, 184 (3d Cir 1998)

First, Simpson is likely to succeed on the merits upon a finding that Defendants have subjected

Simpson to a pervasive risk of danger, and hence failing to protect or provide for Simpson's safekeeping as

required by 18 U.S.C.S. 4042(a)(2), and § 4042(a)(3), and the Eighth Amendment. Simpson is entitled to seek

injunctive and declaratory relief against the United States and it's officials under the Administrative procedures

Act (APA) 5 U.S.C.S. § 702-03, and § 706.

24

Secondly, a denial of a preliminary or permanent injunction will cause harm to Simpson because an ongoing violation of Constitutional rights, and statutes — Constitutes irreparable injury. Fontroy v. Beard, LEXIS 44940 (E.D. Pa 2007).

Third, granting the injunction will not irreparably harm the defendants. Although Defendants allude to a vaguely inept conclusion that handcuffing in non-isolated areas is the best way to manage SMU prisoners, and discontinuing this procedure would be detrimental to the orderly management of the institution. It should be duly noted that a prohibitory injunction on double-celling would not pose any threat to the orderly running of the institution, in fact it would cure the numerous assaults and homocides among cellmates in the SMU. Increased violence due to circumstances generated by double-celling that impose conditions that are dangerous and hence intolerable under the Eighth Amendment are neccessarily proscribed. Tillery v. Owens, 907 F.2d 418, 432 n.6 (3d cir 1990). Also it should be noted that the Eighth Amendments ban on cruel and unusual Punishments cannot be abrogated even for penal purposes Hutto v Finney, 437 U.S. 678, (1978).

Fourth, it is always in the public's best interests that its public officials follow the Constitutional requirements and that they do not violate Federal law.

The defendants cannot rely on disputed facts to support a motion for summary judgement and corresponding requests for injunctive relief, where issues of material fact remain from which a factfinder could draw reasonable inferences that Simpson is entitled to relief. Hunt v. Cromartie, 526 U.S. 541, 552 (1999). Simpson has opposed defendants statment of Material Fact (SMF) as to whether inmates are controlled at all times during handcuffing of double-celled prisoners. See Opposing Statment of Material fact (OSMF) ¶ 29. Inmates are not controlled during handcuffing, in fact incident to assault during handcuffing corrections officers intervention is prohibited. Id at OSMF ¶¶ 11, 28-29. Simpson has further been denied cell changes or cellmate changes subsequent to expressed concerns of violence between he and his cellmate. OSMF ¶¶ 24, 39-41.

G. Should this court grant summary judgement to Defendants Lappin and Bledsoe because they are entitled to qualified immunity

<u>Negative:</u>

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known". Beers-Capitol v. Whetzel, 256 F.3d 120, Footnote 15 (3d Cir 2001). (internal citations and quotation marks omitted). "It is the defendants burden to establish they are entitled to such immunity". <u>Id.</u> "The contours of the right must be sufficiently clear that a reasonable person would understand that what he was doing violates that right". <u>Id.</u>

"Unlike Farmers subjective test of what the official knew, the test for qualified immunity is objective". <u>Id.</u> "Reasonableness is measured by an objective standard; arguments that the defendants desired to handle or subjectively believed that they had handled the incidents properly are irrelevant". <u>Id.</u>

At the time Simpson filed his complaint the doctrine of deliberate indifference was clearly established. "if the plaintiff succeeds in establishing that the defendants acted with deliberate indifference to

constitutional rights, the fortiori the defendants conduct was not objectively reasonable, and hence, the defense of qualified immunity would not be available". Beers-Capitol 256 F.3d 120, at footnote 15 (3d cir 2001).

Failure to protect a handcuffed prisoner from assault was clearly established. Williams v. Holtz-Apple, LEXIS 30710 (MD Pa 2010) (quoting with approval Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 456 (3d cir 1996). Double-celling that creates circumstances of increased violence has been determined impliedly to violate the Eighth amendment was also clearly established. Tillery v. Owens, 907 F.2d 418, 432 n.6 (3d cir 1990).

H. Should this Court dismiss the complaint or grant summary judgement to Defendants Bledsoe and Lappin because they lack personal involvement in the alleged constitutional violation and because respondeat superior cannot form the basis for a Bivens Claim.

<u>NEGATIVE:</u>

Simpson has addressed this issue infra in section E., but will again restate that he has premised his Bivens claims against Lappin and Bledsoe on the theory of <u>Supervisor liability</u> . The holding in Beers-Capitol <u>256 F.3d 120, 134 (3d Cir 2001)</u>, stated that: "According to Sample <u>[885 F.2d at 1118]</u> 'one way-perhaps the easiest way -- a plaintiff can make out a 'supervisor liability' claim is by showing that the supervisory official failed to respond appropriately in the face of an awareness of a pattern of such injuries". <u>Id.</u> "But that is not the only way to make out such a claim as 'there are situations in which the risk of constitutionally cognizable harm is so great and so obvious that the risk and the failure of supervisory officials to respond will alone support findings of the existence of an unreasonable risk, of knowledge of that unreasonable risk, and of indifference to it". <u>Id at 134.</u>

The Beers-Capitol holding articulated that to hold a supervisor liable because of his policies or practices led to an Eighth Amendment violation, the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an

29

unreasonable risk of Eighth amendment injury; (2) the supervisor was aware that the unreason-able risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice. See Sample, 885 F.2d at 1118 (3d Cir 1989).

The Sample four-part test provides the analytical structure for determining whether the policymakers exhibited deliberate indifference to the plaintiff's risk of injury, it being simply the deliberate indifference test applied to that of the specific situation of a policymaker. Beers-capitol, 256 F.3d at 135.

Simpson has identified several existing policies or practices that have created unreasonable risks of Eighth amendment injury i.e., (1) double-celling dangerous prisoners/failure to separate dangerous prisoners who endanger others physical safety. Riley V. Jeffes, 777 F.2d 143, 145 (3d cir 1985); See also OSMF ¶ 4.; (2) handcuffing in non-isolated areas/failure to protect handcuffed prisoners from assault Williams v. Holtzappk, LEXIS 30710 (M.D.Pa 2010); See also OSMF ¶¶ 11, 28-29; and (3) Failure to properly train, supervise, or promulgate emergency procedures mandating immediate cell or cell-mate changes during imminent or expressed concerns of violence. City of Canton v. Harris, 489 U.S. 378 (1989); OSMF ¶ 24.

Secondly Simpson has both alleged and proved Lappin and Bledsoe are aware that the unreasonable risks were created because a substantial risk of inmate attacks was longstanding, pervasive, well-documented, and expressly noted prior to Simpson filing his complaint. Counterman v. Warren County Corr. Facility, 176 Fed. App'x 234, 238 (3d Cir 2008); See OSMF ¶¶ 11, 28-29; Compl ¶15.

Third, the Defendants Lappin and Bledsoe have demonstrated deliberate indifference by their disregard of the risk and failure to take any action to alleviate the risk. OSMF ¶ 11; Compl (Doc 23) ¶ 16.

Fourth, Simpson has continually been exposed to risk of substantial injury and death as a direct result of Lappin and Bledsoe's authorized practices, failure to train/supervise, double-celling, etc. His injury in fact is the invasion of his protected interest in safety under the Eighth Amendment. Compl (Doc 23); OSMF ¶¶ 4-41.

## V. Conlusion

It should be noted that the Defendants have not addressed or disputed Simpson's claims of unreasonable restraint under the Fifth Amendment, nor has the issue of whether or not Simpson is entitled to declaratory relief been either addressed or disputed, as such if this Court finds that the defendants have waived any right to a defense to these claims, then the plaintiff request this court enter summary judgement on these claims in favor of the Plaintiff or schedule a jury trial on these claims.

Also in light of the aforementioned, Plaintiff, Jeffrey E. Simpson requests that this court deny the Defendants motion to dismiss or in alternative for Summary Judgement, and GRANT the Plaintiff's cross motion for Summary Judgement.

Respectfully Submitted,

dated March 9, 2011                    signed   Jeffrey E. Simpson
                                                04394-036
                                                U.S.P. - Lewisburg
                                                P.O. Box 1000
                                                Lewisburg Pa. 17837